**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**THOMAS CHILDERS,**

    **Petitioner,**

    **v.**

**WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,**

    **Respondent.**

    **CASE NO. 2:13-CV-00991
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers**

**REPORT AND RECOMMENDATION**

    Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the instant petition, Respondent's *Return of Writ*, Petitioner's *Reply*, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DENIED** and that this action be **DISMISSED.**

**Facts and Procedural History[1]**

    This case involves Petitioner's October 29, 2010 conviction after a jury trial in the Fairfield County Court of Common Pleas on felonious assault arising from an altercation between Petitioner and his son.[2]  On November 2, 2010, the trial court imposed a sentence of seven years of incarceration.  Petitioner timely appealed, raising the following assignments of error:

> I. THE TRIAL COURT BELOW ERRED BY ADMITTING IMPROPER EVIDENCE AND THUS DENIED MR. CHILDERS A FAIR TRIAL AND DUE PROCESS OF LAW, IN

---

[1] A more detailed recitation of the facts and procedural history of this case may be obtained from the Court's June 26, 2014 *Report and Recommendation*, ECF 12.

[2] Petitioner was found not guilty of the charge of domestic violence.

VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ART. I, §§ 10 AND 16 OF THE OHIO CONSTITUTION.

II. THE JURY'S VERDICT WAS BASED ON INSUFFICIENT EVIDENCE AND/OR WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*State v. Childers*, No. 10-CA-61, 2011 WL 6916399, at *1-2 (Ohio 5th App. Dist. Dec. 27, 2011). On December 27, 2011, the appellate court affirmed the judgment of the trial court. *Id.* On May 9, 2012, the Ohio Supreme Court dismissed Petitioner's appeal. *State v. Childers*, 131 Ohio St.3d 1540 (Ohio 2012). On October 9, 2012, the United States Supreme Court denied Petitioner's petition for a writ of *certiorari. Childers v. Ohio*, 133 S.Ct. 471 (2012).

On October 4, 2013, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the trial court unconstitutionally imposed more than a minimum and consecutive sentence (claim one); he was denied a fair trial due to improper admission of evidence (claim two); that the evidence is constitutionally insufficient to sustain his conviction and against the manifest weight of the evidence (claim three); and that he was denied effective assistance of trial counsel because his attorney failed to file pre-trial motions in *limine* (claim four).[3] On August 4, 2014, the Court granted Petitioner's request to delete his unexhausted claim of ineffective assistance of appellate counsel, and to proceed on his remaining claims. *Opinion and Order*, ECF 14. The case is now ripe for review. It is the position of the Respondent that Petitioner's claims are waived and fail to provide a basis for federal habeas corpus relief.

---

3 The record reflects that Petitioner withdrew his claims of ineffective assistance of counsel in relation to Respondent's previous Motion to Dismiss because it was unexhausted and elected to proceed on his remaining claims. (ECF Nos. 13 & 14.)

**Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.; Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).  If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he or she can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724; *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Maupin,* 785 F.2d at 138 (internal quotations omitted).  Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his claims on the merits if he establishes: (1) a substantial reason to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id.* 'Cause' under this test "must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level or failure to appeal at all. *Id* at 750.

Nevertheless, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray,* 477 U.S. at 495 (quoting *Engle v. Isacc,* 456 U.S. 107, 135 (1892)).  Petitioners who fail to show cause and prejudice for procedural default may nonetheless receive a review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001) (same).  The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

In claim one, Petitioner asserts that the trial court improperly imposed a sentence of seven years incarceration consecutive to any other sentences pending without making required factual findings.  Relatedly, he contends the court imposed three years of mandatory post-release control without addressing the issue at sentencing, in violation of case law of the United States

4

Supreme Court. *Petition*, ECF 1, PageID# 7-10. In claim four, Petitioner asserts that he was denied the effective assistance of trial counsel. Petitioner failed to raise these claims on direct appeal, where he was represented by new counsel. This failure constitutes a clear procedural default based on the rule in Ohio that errors which appear on the face of the record must be raised on direct appeal or will be deemed forfeited. If petitioner were to attempt to raise his claims by any other means, they would be barred by Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); State v. *Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175.

The procedural rule barring petitioner's claims for relief constitutes an adequate and independent state ground for denying relief. The requirement that all available claims be asserted in the first appellate proceeding serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Further, Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. The doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions. Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole; State v. Ishmail; State v. Perry*.

In claim three, Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions, which are against the manifest weight of the evidence. ECF 1, PageID# 17-19. Petitioner presented this claim on direct appeal; however, he failed again to raise the claim in the Ohio Supreme Court and he may now no longer do so under Ohio's doctrine of *res judicata.* He has thereby waived his claim of insufficiency of the evidence and his claim that his convictions are against the manifest weight of the evidence.

Petitioner still may obtain review of his claims on the merits if he can establish cause for his procedural defaults as well as actual prejudice from the alleged constitutional violations. The

Supreme Court has said that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray,* 477 U.S. at 488; *see also Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003) (same) (citing *Coleman,* 501 U.S. at 753).

Petitioner asserts that *res judicata* does not apply, because his claims constituted plain error. *Reply*, ECF 18, PageID# 1074-75, 1077. Alternatively, he argues that the Court should excuse any procedural default because the State provides him no avenue for relief and due to confusing procedural rules. PageID# 1076. These arguments are not persuasive. The state courts did not conduct a plain error review, and Petitioner's claims are not waived on that basis. Instead, as discussed, his claims are waived due to his failure to raise the claims in the state appellate and Ohio Supreme Court, thus depriving the state courts of the opportunity to correct the alleged constitutional violations. Ohio provides a clear avenue for raising on-the-record claims of the alleged violation of federal law, and that is through the process of direct appeal. The state courts appointed counsel to represent Petitioner on direct appeal, where he was able to raise claims that he believed warranted relief. Petitioner further had a remedy for raising a claim of the denial of effective assistance of appellate counsel regarding any errors that he contends should have been raised on direct appeal, but were not. Rule 26(B), Ohio Rules of Criminal Procedure. Petitioner has failed to establish cause and prejudice for his procedural default on this basis.

Petitioner asserts that this case involves a manifest miscarriage of justice and that he is actually innocent such that this Court may address the merits of any claims he has procedurally defaulted. *See Reply*, ECF 18. The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the

6

petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally-barred habeas petition. *Schlup,* 513 U.S. at 317. The actual innocence claim in *Schlup* is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue her constitutional claims if it is "more likely than not" that new evidence-- not previously presented at trial-- would allow no reasonable juror to find her guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained the exception thoroughly in *Souter:*

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-

> whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter,* 395 F.3d at 589–90 (footnote omitted).  Petitioner does not meet these standards. The Court's independent review of the petition and record fails to reveal that any "new facts" have arisen that undermine the result of Petitioner's trial. Petitioner cannot, therefore, establish a claim for actual innocence sufficient to avoid his procedural default.

Claims one, three and four are procedurally defaulted.

**Claim Two**

In claim two, Petitioner asserts that he was denied a fair trial due to the improper admission of voicemails,[4] and DNA evidence due to the State's failure to establish an appropriate chain of custody as required under state and federal law.  *Petition,* ECF 1, PageID# 11-17.  The state appellate court rejected these claims, holding that the trial court did not err in admitting recordings of Petitioner's voicemails coupled with jury instructions limiting consideration of the evidence to establishing Petitioner's state of mind.  *State v. Childers*, 2011 WL 6916399, at **3.  The appellate court further determined that the trial court properly admitted the DNA evidence as an authenticated business record and did not violate the Confrontation Clause by doing so, as Petitioner had the opportunity to cross-examine the witness introducing the evidence and who prepared the report.  *Id*. at *5.  The Court reviews this claim on the merits.

---

[4] Specifically, Petitioner complains that the trial court improperly admitted  "telephone messages he left for Tammy Nash on the evening of the altercation."  *See State v. Childers*, 2011 WL 6916399, at *3.

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––– U.S. ––––, ––––, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable

application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show

that the state court relied on an "unreasonable determination of the facts in light of the evidence

presented in the State court proceeding"). The United States Court of Appeals for the Sixth

Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent
> if (1) "the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law[,]" or (2) "the
> state court confronts facts that are materially indistinguishable
> from a relevant Supreme Court precedent and arrives" at a
> different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct.
> 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an
> "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it
> "identifies the correct governing legal rule from [the Supreme]
> Court's cases but unreasonably applies it to the facts of the
> particular ... case" or either unreasonably extends or unreasonably
> refuses to extend a legal principle from Supreme Court precedent
> to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146
> L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with

the petitioner. *Cullen v. Pinholster*, 570 U.S. 170, ——, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court

precedent] unreasonable, . . . [t]he state court's application must have been objectively

unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21,

(2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and

*Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786

("A state court's determination that a claim lacks merit precludes federal habeas relief so long as

"'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable

application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the

reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009)

("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399.

Petitioner argues that his claims warrant relief and that he has rebutted the presumption of correctness of the factual findings of the state appellate court. He asserts that the state appellate court unreasonably determined the facts in light of the evidence presented. However, Petitioner refers to no part of the record supporting this allegation, and fails to meet his burden of establishing by clear and convincing evidence that this is the case.

Petitioner argues that the state trial court improperly admitted evidence in violation of Rule 901 and 404(B) of the Ohio Rules of Evidence. This issue involves the application of state law and evidentiary rules, and does not provide a basis for relief.  A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). "'[E]rrors in application of state law, especially with regard to the admissibility of

evidence, are usually not cognizable in federal habeas corpus.'" *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.1983) (other citations omitted)). The Court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted).  Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 388, 897 (6th Cir. 2008).  The record fails to reflect such circumstances here.

Additionally, as to the admission of other acts, the United States Supreme Court has declined to hold that similar "other acts" evidence under Rule 404(B) is so extremely unfair that its admission violates fundamental conceptions of justice.  *Dowling v. United States*, 493 U.S. 342, 352–53, (1990).  "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh,* 329 F.3d 496, 512 (6th Cir. 2003). Consequently, this claim cannot provide a basis for relief.

Petitioner argues that admission of DNA evidence violated his rights under the Confrontation Clause.  The state appellate court denied this claim in relevant part as follows:

> Appellant further maintains the trial court abused its discretion in the admission of DNA evidence related to blood samples taken from the car involved in the striking of Luke Childers, as the State failed to demonstrate a sufficient chain of custody for the evidence.
>
> Generally, chain of custody issues go to the weight, rather than the admissibility of evidence. *See, State v. Rollins*, 2008–Ohio–6116; *State v. Lenoir*, 2010–Ohio–4910, and State v. Ross, 2010–Ohio–5096.
>
> . . .

Appellant asserts the State failed to present witness testimony to affirmatively establish the chain of custody of the DNA samples tested. Rather, the State offered a computer printout exhibit as to the persons who handled the blood samples and introduced the testimony of Adam Garver, a forensic scientist employed by the Ohio Bureau of Criminal Identification and Investigation. Appellant asserts the document contained hearsay statements and the admission of the document violated his Confrontation Clause rights.

At trial, the trial court stated on the record:

"The Court: The Court agrees with the State as far as the arguments submitted concerning the chain of evidence; that all those arguments go to weight and not admissibility.

"The Court also finds that pursuant to Evidence Rule 901(B)(1), there was sufficient evidence by Mr. Garver and the other technician who testified that the documents sought to be admitted—or BCI documents sought to be admitted are what they claim to be.

"The Court also finds there is no hearsay problem; that these are business records under Evidence Rule 803(6), and there was sufficient testimony by a person with knowledge. And perhaps most importantly, the Court finds that the holding in Crawford versus Washington relating to the right of a defendant to confront any witnesses who testify against him are not—is not violated here. And the Court would cite counsel to State versus Middlebrooks. This is a 2010 case decided May 28th 2010; 2010 Ohio 2377, Court of Appeals, Sixth District, Lucas County. And it acknowledges that Crawford versus Washington, in general, held that the admission of lab reports absent the testimony of the analyst who performed the test violated a defendant's Sixth Amendment right of confrontation. But is also further cites this *Melendez–Dias* case in which it is quoted:

"'Noting in the U.S. Supreme Court's decision in *Melendez–Dias* speaks specifically to the admissibility of a second analyst's testimony or whether the Sixth Amendment requires testimony from the analyst who performed the original test.

"The Court did explain that its decision did not mean that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device must appear in person as part of the Prosecution's case.

13

> "And in general, this case goes on to justify the admissibility of evidence when not every technician or not every analyst who is part of the chain of the analysis is present to testify. There just must be some sufficient testimony and evidence before the Court, which the Court finds was present here."
> Tr. at 444–446.

> Upon review, we find the trial court properly admitted the evidence as an authenticated business record, and the trial court did not violate Appellant's right to confrontation as Appellant had the opportunity to cross-examine the witness introducing the evidence and who prepared the report.

*State v. Childers*, 2011 WL 6916399, at *4-5.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970).  In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court abrogated its holding in *Ohio v. Roberts*, 448 U.S. 56 (1980), and re-defined the test for determining whether admission of hearsay statements violates the Confrontation Clause. The Supreme Court in *Crawford* held that testimonial statements of a witness who does not appear at trial are inadmissible unless the witness was unavailable to testify and the defense had a prior opportunity to cross examine the witness. Under *Crawford,* "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Id*. at 1366. The Supreme Court, however, left untouched application of *Roberts* to cases involving nontestimonial hearsay:

> "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts*, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford,* 541 U.S. at 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. As the courts applying *Crawford* have observed,

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements. . . .
>
> [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*Coy v. Renico*, 414 F.Supp.2d 744, 773 (E.D.Mich.2006) (quoting *United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005)); *Horton v. Allen*, 370 F.3d 75, 83–84 (1st Cir. 2004).

The Supreme Court declined to define a comprehensive definition of the term "testimonial," but indicated, at a minimum, the term includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford,* 541 U.S. at 68. A casual remark to an acquaintance, business records, and statements made in furtherance of a conspiracy do not constitute testimonial statements within the protection of the Sixth Amendment. *Id*. at 51–55.

To determine whether a statement is testimonial, the Court "must decide whether it has 'a primary purpose of creating an out-of-court substitute for trial testimony.'" *Bullcoming v. New Mexico*, -- U.S. --, --, 131 S.Ct. 2705, 2720 (2011) (Sotomayor, J. concurring) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). Under the "primary purpose" test, statements "are testimonial when the circumstances objectively indicate" that their primary purpose "is to establish or prove past events potentially relevant to later criminal prosecution." *Ohio v. Clark*, -- U.S. --, --, 135 S.Ct. 2173, 2179-80 (2015) (citing *Harmon v. Indiana*, 547 U.S. 813, 822 (2006)).[5] In making this inquiry, the Court must consider all relevant circumstances. *Id*. at 2180. "[T]he primary purpose test is a necessary, but not always sufficient, condition for the

_____

[5] *Ohio v. Clark* involved admission of a child's out-of-court statements to a teacher identifying Clark as the perpetrator of child abuse.

15

exclusion of out-of-court statements under the Confrontation Clause." *Id.* at 2180-81. Where a scientific report provides a statement made for the purpose of establishing or proving some fact, it constitutes a testimonial statement, the admission of which violates the Confrontation Clause. *Bullcoming,* 131 S.Ct. at 2720 (Sotomayor, J. concurring) (citing *Melendez-Diaz v. Massachusetts,* 557 U.S. 305 (2008)). "[I]n the Confrontation Clause context, business and public records 'are generally admissible absent confrontation ... because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.'" *Id.* (citing *Melendez–Diaz,* 557 U.S., at 322-23)).

In the Sixth Circuit, the test for determining whether a statement is deemed testimonial within the meaning of *Crawford* is:

> . . .  whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

*United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004).

Further, "admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. . . .  [T]he statement must be used as hearsay-in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005). A violation of the Confrontation Clause is subject to harmless error review. *United States v. Pugh*, 405 F.3d at 400 (citing *Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005)).

Petitioner challenges admission of DNA evidence indicating that police recovered Luke Childers' blood from Petitioner's his car, corroborating Luke's testimony that Petitioner intentionally hit him with the car on the night at issue. Petitioner argues that, under the Supreme

Court's decision in *Melendez-Diaz*, without the live testimony of each person involved in the chain of custody with respect to the blood obtained, admission of the DNA results violated the Confrontation Clause.

In *Melendez-Diaz*, the Supreme Court held that admission of affidavits indicating the results of forensic analysis establishing that material seized by police and connected to the defendant constituted cocaine, without testimony of the person who obtained those results, constituted testimonial evidence within the meaning of *Crawford*. As such, the Court determined that admission of the evidence violated the defendant's right to cross-examine witnesses under the Sixth Amendment. In so holding, the Supreme Court stated:

> [T]he Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . . Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." 541 U.S., at 61–62, 124 S.Ct. 1354, 158 L.Ed.2d 177.

*Id*. at 2536.

Similarly, in *Bullcoming,* the United States Supreme Court held that a blood alcohol breath test report indicating the defendant's blood alcohol content in a prosecution for driving while under the influence of alcohol constituted a testimonial statement within the Sixth Amendment. The Court concluded that the defendant had a right to cross-examine the analyst who conducted the breath test, absent unavailability of the witness and a prior opportunity for cross-examination. In *Bullcoming,* the prosecution failed to present the witness who had conducted the blood-alcohol test. Instead, the prosecution introduced the evidence through

another analyst who had no involvement in the specific test but qualified as an expert in the blood alcohol testing machine. *Id.* at 2713.

None of these cases, however, involves the issue at hand, namely whether each individual who handled the blood sample in this case must testify at trial in order to establish that it was the same blood recovered from Petitioner's car that tested positive for Luke's DNA. More particularly, these cases do not go to the heart of Petitioner's argument that admission of the report showing the chain of custody, listing the individuals names without their associated testimony, violated the Confrontation Clause. Both parties argue that a footnote in *Melendez-Diaz* supports their position on whether relief is warranted. Read in its context, the language referred to indicates in relevant part as follows:

> In short . . . analysts' affidavits were testimonial statements, and the analysts were "witnesses" for purposes of the Sixth Amendment. Absent a showing that the analysts were unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine them, petitioner was entitled to "'be confronted with'" the analysts at trial. *Crawford, supra*, at 54, 124 S.Ct. 1354.FN1
>
> FN1. . . . [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that "[i]t is the obligation of the prosecution to establish the chain of custody," post, at 2546, this does not mean that everyone who laid hands on the evidence must be called. As stated in the dissent's own quotation, *ibid.*, from *United States v. Lott*, 854 F.2d 244, 250 (C.A.7 1988), "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony is introduced must (if the defendant objects) be introduced live. Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records. See infra, at 2550 – 2551, 2552.

*Melendez-Diaz*, 129 S.Ct. at

This Court is not persuaded that this language stands for the proposition that testimony of each witness involved in the chain of custody of evidence obtained by police, who are testifying for the sole purpose of establishing the chain of custody, constitutes "testimonial" evidence, as that term has been defined by the United States Supreme Court under its interpretation of the Confrontation Clause.  Other federal courts have reached this same conclusion.  *See United States v. Ortega,* 750 F.3d1020, 1025-26 (8th Cir. 2014)("chain of custody alone does not implicate the Confrontation Clause") (quoting *United States v. Johnson,* 688 F.3d 494, 505 (8th Cir. 2012).

For example, in *Whorton v. Klee*, No. 10-cv-13902, 2012 WL 5844196 (E.D. Mich. Oct. 26, 2012), the court rejected the argument that Confrontation Clause concerns required in-court testimony the processor of a fingerprint, in addition to the witness who conducted the fingerprint comparison, reasoning as follows:

> The situation present in *Melendez–Diaz* and *Bullcoming* was not present in petitioner's case. Kuzila did not relate anyone else's test results, nor did she testify about any test that she herself did not perform. As her testimony indicates, she was the one who performed the latent fingerprint comparison. The only testimony regarding Davis and Marage related to their actions in collecting and processing the evidence, not their analyses of the evidence. Such testimony amounts to chain-of-custody evidence, and the Court made clear in both *Melendez–Diaz* and *Bullcoming* that such chain-of-custody testimony does not implicate the Confrontation Clause. *See Bullcoming*, 131 S.Ct. at 2712 n. 2; *Melendez–Diaz*, 557 U.S. at 311 n. 1 ("Contrary to the dissent's suggestion, we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case."). Because Kuzila's testimony did not "certify a test result" performed by the non-testifying technicians, and did not "opine as to the accuracy of [any] testing" performed by them or their "adherence to any testing protocol," her testimony did not run afoul of the Confrontation Clause.

> *United States v. Tearman,* 70 M.J. 640, 642–43 (N–M Ct.Crim.App.2012); see also, *United States v. Johnson*, 688 F.3d 494, 505 (8th Cir. 2012). Thus, any objection to this testimony on confrontation grounds would have been meritless, and counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).

*Id*. at *29.

Again, Petitioner asserts that government failed to present witness testimony affirmatively establishing the chain of custody of the DNA sample and offered only a report identifying the individuals who handled the blood.  He maintains that the report constitutes hearsay and that its admission of this document violation his rights under the Confrontation Clause.  The state appellate court determined that Petitioner's right to confrontation had not been violated because he had the opportunity to cross-examine the witness who prepared the report.  Based on the analysis above, this Court concludes that the state appellate court did not unreasonably apply clearly established federal law as determined by the United States Supreme Court, or base its decision on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Claim two is without merit.

**Recommended Disposition**

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DENIED** and that this action be **DISMISSED**.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


                                        s/ *Elizabeth A. Preston Deavers*
                                        ELIZABETH A. PRESTON EAVERS
                                        UNITED STATES MAGISTRATE JUDGE

Date:  September 10, 2015